# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SHARON POMPEY ROGERS,

     Plaintiff,

v.                           Case No. 6:24-cv-2267-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

     Defendant.

## OPINION AND ORDER[2]

## I.   Status

Sharon Pompey Rogers ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of Graves disease, diabetes, general autoimmune issues, and anxiety. Transcript of Administrative Proceedings (Doc. No. 8; "Tr." or "administrative transcript"), filed February 10, 2025, at 156. Plaintiff protectively filed an

---

[1]     Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

application for DIB on September 20, 2017, alleging a disability onset date of September 1, 2016.[3] Later, the alleged onset date was amended to February 15, 2018. See Tr. at 52, 121, 426-34. The application was denied initially,[4] and upon reconsideration, Tr. at 155-73, 174, 208-14.

On July 23, 2021, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who appeared on her own behalf, and a vocational expert ("VE"). See Tr. at 145-54. The hearing was continued so that Plaintiff could attempt to obtain counsel. See Tr. at 153. On October 26, 2021, the ALJ held a supplemental hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a VE. See Tr. at 107-44. On March 2, 2023, the ALJ held a second supplemental hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a VE. See Tr. at 87-106. On May 16, 2023, the ALJ held a third supplemental hearing, during which she heard testimony from Plaintiff, who was represented by counsel; a VE; and a medical expert ("ME"). See Tr. at 65-86. On December 12, 2023, the ALJ held a fourth supplemental hearing, during which she heard

---

[3]     The actual application was not located in the administrative transcript. The protective filing date for the DIB application is listed in the administrative transcript as September 20, 2017. See, e.g., Tr. at 156. The administrative transcript notes that a subsequent application was filed on September 10, 2019. Tr. at 453.

[4]     The initial denial was not located in the administrative transcript.

testimony from Plaintiff, who remained represented by counsel; a VE; and a ME. See Tr. at 46-64.[5]

On February 2, 2024, the ALJ issued a Decision finding Plaintiff not disabled through December 31, 2020, the date last insured ("DLI"). See Tr. at 21-35. Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. See Tr. at 5-6 (Appeals Council exhibit list and order), 382-84 (request for review), 594-98 (brief). On November 4, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On December 12, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises as the issue "[w]hether the ALJ provided an adequate analysis of the supportability and consistency factors when evaluating the persuasiveness of the medical opinions of record and [took] into account the range of fluctuation in symptoms." Memorandum in Support of Plaintiff (Doc. No. 12; "Pl.'s Mem."), filed March 24, 2025, at 15 (emphasis omitted); see id. at 15-28. On June 2, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing the issue.

---

[5] All of the hearings were held telephonically. See Tr. at 21, 233, 242-43, 245, 332.

Then, on June 16, 2025, Plaintiff's Memorandum in Reply (Doc. No. 20; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.    The ALJ's Decision

When determining whether an individual is disabled, [6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[6]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

Here, the ALJ followed the five-step inquiry. See Tr. at 24-35. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 20, 2017 through her [DLI] of December 31, 2020." Tr. at 24 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff through the DLI "had the following severe impairments: mild chronic obstructive pulmonary disease; diabetes mellitus type II; degenerative disc disease of the lumbar spine with L5 radiculopathy; cervical degenerative disc disease; intermetatarsal neuroma of the right foot; left-sided hearing loss; status-post right thumb joint fusion; and borderline obesity." Tr. at 24 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff through the DLI "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following RFC through the DLI:

> [Plaintiff could] lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, frequently handle and finger with the dominant right upper extremity, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and work around extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and pulmonary irritants, and never climb ladders, ropes, and scaffolds and work around hazards such as unprotected

heights or moving machinery. She was limited to a moderate noise levels such as that found in an office.

Tr. at 27 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff through the DLI "was capable of performing her past relevant work as a Telephonic Salesperson and as an Accounting Clerk." Tr. at 35 (emphasis omitted). The ALJ concluded Plaintiff "was not under a disability . . . at any time from September 20, 2017, the alleged onset date, through December 31, 2020, the [DLI]." Tr. at 35 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v.

Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating various prior administrative medical findings and medical opinions: non-examining state agency physician Shakra Junejo, M.D.; consultative examiner Krishna Vara, M.D.; treating neurologist Gary Weiss, M.D.; and the non-examining ME who testified at the May 16, 2023 and December 12, 2023 hearings, Gilberto Munoz, M.D. See Pl.'s Mem. at 15-28; Reply at 3-7. According to Plaintiff, the ALJ failed to adequately address the required supportability and consistency factors when evaluating the opinions and failed to supply adequate rationale to support her conclusions. See Pl.'s Mem. at 15-28; Reply at 3-7. Responding, Defendant argues the ALJ did what was required by the Regulations, and substantial evidence supports her findings. Def.'s Mem. at 2, 4-17.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it

---

[7]    Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

---

[8]    When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she]

(Continued…)

Here, the ALJ assessed the prior administrative findings and medical opinions at issue as follows. Regarding non-examining state-agency physician Dr. Junejo, the ALJ wrote[9]:

> [Dr. Junejo] opined that [Plaintiff] was limited to light work with postural and environmental limitations. . . . [Dr. Junejo] concluded that she could perform her past relevant work.
>
> . . .
>
> [This] opinion is partially persuasive because [it is] generally consistent with and supported by the objective medical evidence, which indicates that [Plaintiff] experiences some exertional, postural, and environmental limitations due to her impairments. . . . [The] opinion is only partially persuasive because the objective medical evidence supports more restrictive exertional limitation as well as some manipulative limitations for her right upper extremity. [Plaintiff] experiences back pain, neck pain, foot pain, shortness of breath, and right-hand pain. The objective medical evidence supports limiting [Plaintiff] to sedentary work.

Tr. at 31 (citation omitted). Regarding the opinion of consultative examiner Dr. Vera, see Tr. at 638-43, the ALJ wrote:

---

considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

[9]    The ALJ did not refer to Dr. Junejo by name, instead referring to "Ex. 1A," Tr. at 31, which contains Dr. Junejo's opinion, as well as opinions of other non-examining state agency physicians, Tr. at 155-73. Plaintiff specifically challenges Dr. Junejo's opinion (although in places, she refers to "opinions," she only discusses Dr. Junejo's). See Pl.'s Mem. at 19-21. Because Plaintiff challenges Dr. Junejo's opinion, the undersigned has omitted the ALJ's discussion of others and has made any plural references by the ALJ to multiple opinions singular.

> Dr. Vara, a consultative examiner, opined that [Plaintiff] is limited to lifting no more than 20 pounds; and no prolonged standing, walking, bending for more than four hours in an eight-hour workday.
>
> Dr. Vara's opinion is generally persuasive because it is consistent with and supported by the objective medical evidence. [Plaintiff] experienced significant exertional and postural restrictions due to the combination of her severe physical impairments. However, through the [DLI], her limitations would not have precluded the performance of her past relevant sedentary work.

Tr. at 31 (citation omitted).

Treating neurologist Dr. Weiss originally authored an opinion stating it was effective from February 7, 2020 through the date of the September 13, 2021 opinion. Tr. at 1017-20. Later, after reviewing certain CT scans, he agreed it should be effective beginning February 15, 2018. Tr. at 928. Regarding Dr. Weiss's opinion, the ALJ wrote:

> Gary Weiss, M.D., opined that since the alleged onset date [Plaintiff] was limited to: sitting for 20 minutes without interruption; standing and walking for 10 minutes without interruption; sitting for three hours total in an eight-hour workday; standing and/or walking for three hours total in an eight-hour workday; lying down for three hours in an eight-hour workday; she should elevate her legs every one to two hours for 15 to 30 minutes; she would be off tasks 25 percent or more while at work; she would miss three days or more per month; she can lift five pounds occasionally; she can occasionally balance; she can never climb, stoop, crouch, kneel, or crawl; and she can push and pull five percent of the work day with additional unspecified manipulative limitations related to reaching, fingering, and feeling.

- 11 -

> Dr. Weiss's opinion is not persuasive because it is inconsistent with and not supported by the object[ive] medical evidence. During the November 2019 consultative evaluation, [Plaintiff] had decreased range of motion of her spine, but she had no neurological deficits. Her motor strength, sensation, and reflexes were intact. [Plaintiff] had an antalgic gait, but she did not require an assistive device. She had a normal hand grip and no abnormalities of the upper extremities. Dr. Weiss does not cite any significant abnormalities to support all the limitations noted, including the extent to which sitting, standing, walking, lifting, carrying, and postural activities are performed, the need to lie down/recline or elevate the legs, time off task, excess absences, and upper extremities functions. Through the [DLI], [Plaintiff's] symptoms were stable with treatment. Her limitations would not have precluded the performance of her past relevant sedentary work.

Tr. at 32 (citations omitted).

Finally, regarding non-examining ME Dr. Munoz's opinions, see Tr. at 999-1015 (interrogatory), 51-60 (December 12, 2023 hearing testimony), 69-76 (May 16, 2023 hearing testimony), the ALJ wrote:

> In Response to a Medical Interrogatory, Gilberto Munoz, M.D., an impartial medical expert, opined that [Plaintiff] was limited to light work prior to February 25, 2020, and sedentary work after February 25, 2020. Following examination during the May 16, 2023 hearing, Dr. Munoz opined that from February 15, 2018 through November 11, 2019, [Plaintiff] had the [RFC] to lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand for two hours without interruption and for three hours total in an eight-hour workday; could walk for one hour without interruption and three hours total in an eight-hour workday; could sit for four hours without interruption and six hours total in an eight hour workday; could frequently climb

- 12 -

ramps and stairs; could frequently balance, stoop, kneel, crouch, and crawl; could occasionally work around extreme cold, vibrations, fumes, odors, dust, gases, and pulmonary irritants; could never climb ladders and scaffolds; could occasionally work around unprotected heights and moving machinery; and was limited to moderate noise levels such as that found in an office. Dr. Munoz further opined that from November 12, 2019 through December 31, 2020, the [DLI], [Plaintiff] had the [RFC] to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; could stand 30 minutes without interruption and one hour total in an eight-hour workday; could walk 15 minutes without interruption and one hour total in an eight-hour workday; could sit for two hours without interruption and six hours total in an eight-hour workday; could frequently reach from waist to chest with the bilateral upper extremities; could frequently operate foot controls with the left foot; could frequently handle and finger with the right upper extremity; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, crawl, and work around extreme cold, vibrations, fumes, odors, dust, gases, and pulmonary irritants; could never climb ladders and scaffolds; could never work around unprotected heights and moving machinery; and was limited to moderate noise levels such as that found in an office.

At the December 12, 2023 hearing, Dr. Munoz indicated that he was revising his prior opinions. [He] opined that [Plaintiff] can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; she can stand and/or walk for two hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she can tolerate occasional exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and pulmonary irritants; she can never climb ladders, ropes, or scaffolds; she never work

around hazards, such as unprotected heights or moving machinery; she is limited to a moderate noise levels, such as found in an office; and she can frequently handle and finger with the right upper extremity.

Dr. Munoz's revised opinion is persuasive because it is consistent with the objective medical evidence. [Plaintiff] has sought treatment for back pain, neck pain, and shortness of breath. She experiences some exertional, postural, manipulative, and environmental limitations. However, her symptoms have been stable with treatment. Dr. Munoz's opinion is also supported by the objective medical evidence. Findings from a February 2018 musculoskeletal exam were unremarkable. Findings from an April 2019 pulmonary function test showed evidence of mild restrictive ventilatory defect. During the November 2019 consultative evaluation, [Plaintiff] had decreased range of motion of her spine, but she had no neurological deficits. Her motor strength, sensation, and reflexes were intact. [Plaintiff] had an antalgic gait, but she did not require an assistive device. She had a normal hand grip and no abnormalities of the upper extremities. Her neck pain was stable in December 2019. [Plaintiff's] A1C measured 6.9% in February 2020. Findings from a February 2020 EMG/NCS showed evidence of left sided L5 radiculopathy. At the time, straight leg raise testing was positive, her gait was antalgic, but she was not using an assistive device. She has some reduced range of motion in her spine. She had slight weakness in her left fingers and left ankle, but otherwise, she had normal motor strength. Her sensation was intact. Her diabetes was well controlled in September 2020. [Plaintiff's] diabetes continued to be well controlled in March 2021. Her back pain was noted to have improved with an injection in October 2021. March 2023 chest x-rays showed no acute finding. Through the [DLI], [Plaintiff] experienced some significant limitations from her severe physical impairments. However, her limitations would not have precluded the performance of her past relevant sedentary work.

Tr. at 33-34 (citations omitted).

The ALJ's Decision reflects consideration of the required supportability and consistency factors, and her conclusions are supported by substantial evidence. In arguing to the contrary, Plaintiff indicates that the state agency physician, Dr. Junejo, "did not have the opportunity to view any of the later records which were strongly supportive of more extensive limitations." Pl.'s Mem. at 21. While this is accurate, the ALJ assigned a more restrictive RFC than did Dr. Junejo. Compare Tr. at 167-71 (Dr. Junejo), with Tr. at 27 (ALJ). Thus, the ALJ recognized the overall evidence supported more restrictions, and her findings are supported by the evidence.

As to Dr. Vera, Plaintiff argues the ALJ provided "inadequate explanation" for finding her opinion to be "generally persuasive." Pl.'s Mem. at 22; Tr. at 31. Although the ALJ could have provided more detail when discussing Dr. Vera's opinion, the ALJ noted that Plaintiff "experienced significant exertional and postural restrictions due to the combination of her severe impairments," Tr. at 31, which supported the limitations that Dr. Vera imposed, see Tr. at 638-43.

Regarding Dr. Weiss, Plaintiff contends "the ALJ did not adequately consider the supportability" of the opinion and "misstates the record" in finding that Plaintiff's symptoms were stable through the DLI. Pl.'s Mem. at 23, 24. It is true, as Plaintiff argues, that Dr. Weiss did cite some objective findings in his

opinion. <u>See</u> Tr. at 1018-19. While the ALJ did not specifically refer to these findings in determining Dr. Weiss's opinion was "not persuasive," Tr. at 32, the ALJ pointed to other objective evidence of record from before the DLI that detracts from Dr. Weiss's significant assigned limitations, Tr. at 32.

Plaintiff contends the ALJ "misstates the record" in relying on the stability of symptoms, Pl.'s Mem. at 24, but the undersigned cannot say so. The ALJ relied specifically on the November 2019 consultative examination by Dr. Vara. Tr. at 32; <u>see</u> Tr. at 638-43. Plaintiff points to another examination—that of Dr. Weiss as part of his treatment of Plaintiff—from February 2020. Pl.'s Mem. at 24; Reply at 3; <u>see</u> Tr. at 908-12. But, even Plaintiff recognizes that most findings from this examination were "[c]onsistent with Dr. Vara." Pl.'s Mem. at 24; <u>see</u> Tr. at 909-12. The other evidence relied upon by Plaintiff is dated eight months after the DLI, so its relevance to the ALJ's findings is minimal. The ALJ's findings with respect to Dr. Weiss are supported by substantial evidence.

Finally, Plaintiff challenges the ALJ's findings regarding non-examining ME Dr. Munoz, as "conclusory" and "lack[ing] rationale." Pl.'s Mem. at 25, 25-28. The ALJ determined Dr. Munoz's opinion was "persuasive because it is consistent with the objective medical evidence." Tr. at 34. In support, the ALJ observed Plaintiff's "symptoms have been stable with treatment." Tr. at 34. This finding has already been addressed above. Next, the ALJ relied on, among other

things, the November 2019 consultative examination by Dr. Vara, Tr. at 34, which was also addressed above. The ALJ further cited additional objective evidence to support her conclusions. Tr. at 34. Plaintiff's arguments regarding such evidence, <u>see</u> Reply at 3-6, are unavailing in light of the Court's duty not to reweigh the evidence.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 19, 2026.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record

- 17 -